**PEAVY–WILSON LUMBER CO., Inc., v. LOFTIN et al.**

No. 10312.

Circuit Court of Appeals, Fifth Circuit.

Dec. 5, 1942.

Rehearing Denied Jan. 26, 1943.

R. F. Maguire, J. R. Wells, and C. E. Lemire, all of Orlando, Fla., for appellant.

Russell L. Frink, John B. L'Engle, George C. Bedell, and Chester Bedell, all of Jacksonville, Fla., for appellees.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Seeking the specific performance of a written trackage operation agreement[1] made with it on July 21, 1937, by Kenan and Loftin, as receivers of the Florida East Coast Railway, and amended on June 17, 1941, as of April 21, 1941, by substituting "Loftin and Lane, as Trustees in reorganization of Florida East Coast Railway Company" wherever the words "Kenan and Lane, Receivers of Florida East Coast Railway" appear in the contract and surety bond, appellant, invoking the ancillary jurisdiction of the court as a court of bankruptcy, intervened in the railroad reorganization proceedings. Making Loftin and Lane, as trustees, and the Brotherhood of Railroad Trainmen, the Brotherhood of Locomotive Firemen and Enginemen and the Brotherhood of Locomotive Engineers, each an unincorporated local association, parties to its intervention, it set out the written agreement as an exhibit,

---

[1] In substance it gave the lumber company the right to operate its trains over the tracks of the railroad between Wewhotce and Holopaw, a distance of 19 miles, for the purpose of transporting the timber, logs, workmen, employees and supplies only between the timber lands of the lumber company and its mills located at Holopaw, obligated it to furnish all cars, fuels, supplies and other necessary materials and equipment for the operation, and required it to maintain the engines, cars and equipment in a condition satisfactory to the railway and conform to all lawful laws and regulations, State or Federal, as to inspection, etc. Providing that the lumber company shall, at its own expense, employ and furnish the necessary enginemen, firemen, trainmen, brakemen, flagmen and all necessary employees for the safe operation of the trains, all of whom shall be competent and acceptable to the Railway Company "and their employment or continuance in employment shall be subject to the Railway's approval", it contained these further significant provisions: (1) "The Railway reserves the right to provide a pilot for said engines and trains of the Lumber Company, and if it should become necessary so to do, or at its own option, the Railway may provide a full crew, or crews, to man the said train or trains, or engines, the expense of said pilot, and any crews so furnished by the Railway, to be borne by the Lumber Company". (2) "In the event it should become necessary, in the judgment and opinion of the Railway, that the train or trains to be operated hereunder shall be manned by a full crew or crews of the Railway's selection, then and in that event the said Lumber Company agrees to pay the entire cost and expense of such Railway crew or crews". (3) "The trains and engines of the Lumber Company shall be operated by the order of the proper representatives of the Railway, and the crews thereof shall receive orders and instructions from the officers and agents of the Railway Company, and shall be in all respects subject to and shall obey the rules and regulations of the Railway governing the operation of trains on its tracks and duties and responsibilities of its employees of similar class". (4) "Any alteration, amendments or other changes required or made necessary by authority of any law or order of any competent court, commission or other governmental authority having jurisdiction over the parties hereto shall not be deemed to be a violation of or departure from the terms of this contract". There was the following provision fixing the term and providing both for the renewal and for the termination of this agreement:

"This agreement shall continue in full force and effect for a period of two years from the day and year first herein written, subject to termination as hereinafter provided. Unless either party more than ninety days prior to the expiration of the initial term, or any renewal term shall give notice, in writing, of intention to terminate this agreement at the expiration of such initial or renewal term, this agreement shall be considered as renewed and extended for one year, and shall continue in effect from year to year, subject to the same terms and conditions as herein contained, until terminated as hereinafter provided: (a) This agreement is terminable (with prior notice to lessee) by the Receivers, or their successors, or the assigns of the receivership estate, at their option, upon the discharge of the Receivers as such, any fixed period of time or any other thing herein to the contrary notwithstanding and in the absence of such cancellation, all rights of said receivers hereunder shall inure to the benefit of their successors or the assigns of the receivership estate. (b) This agreement may be terminated by either party, at any time during the initial two year term and during any yearly renewal term by the giving of ninety days prior notice in writing to the other party of intention to so terminate."

and alleged that as a condition to its entering into and as a part of the governing agreement between the parties, it was agreed between it and the receivers that the railroad company would not invoke the provision of the agreement for putting its own crews on plaintiff's engines and cars unless required to do so by lawful order of some governing authority, State or Federal. It then alleged that on July 18, 1941, the trustees had advised it by letter[2] that because of awards and an order made by the National Railroad Labor Adjustment Board, Division No. 1, requiring them to put the Railway Company's own train crews in charge of plaintiff's train operation covered by the trackage agreement, they were hereby giving formal written notice; that the trustees will exercise the rights reserved by the receivers under the original agreement and will, commencing July 31, 1941, man with crews of the Florida East Coast Railway Company all trains of Peavy-Wilson Lumber Company operating under the agreement, and that "the trustees will not be in a position to renew the present trackage right contract or negotiate any other contract with you except upon the basis of manning Peavy-Wilson trains with crews of the Florida East Coast Railway Company and at the expense of the Lumber Company". There were allegations that the awards are not lawful orders or judgments, by a competent court or commission or other governmental authority having jurisdiction over the parties to the agreement of July 21, 1937, but were invalid, illegal and void, and known by the trustees to be so, and that the refusal of the trustees of the railway company to go ahead with the performance of the contract was not in accordance with the agreement, but was wrongful. There was a prayer that the court direct the trustees to proceed pendente lite on the same basis as before July 31, 1941, and that upon final hearing the court adjudge that intervener is entitled to man with its own crews its engines and trains using said tracks and that the trustees be required to specifically perform the contract upon the basis on which it was entered into. While process was asked, there was no prayer for relief, as to the Brotherhoods. On August, 13, 1941, there was an order, determining that the court had jurisdiction of the subject matter of plaintiff's intervention, allowing the filing of an amended petition, and pendente lite requiring the trustees to permit the lumber company to operate its trains with the lumber company's crews upon the same basis existing prior to July 31, 1941. The trustees' answer consisted of an admission of substantially all of the allegations of the amended petition, including petitioner's allegations as to the illegality of the awards and order of the Board, except the allegation that the receivers had verbally agreed not to enforce the provisions of the contract for manning petitioner's trains with its own crews. As to that allegation, the trustees averred, that upon inquiry made trustees believed that petitioner did object to the inclusion of those provisions in the agreement and "that the receivers in reply to such objection did advise petitioner's president in substance that while they, as receivers, were only temporary custodians of the assets of Florida East

---

The letter referring to conferences had with plaintiff in regard to the Railroad Labor Board's awards and order, conceded that plaintiff's train crews had been competent and the operation of its trains entirely satisfactory. It stated: "We also recognize merit in your contention to the effect that when the trackage agreement of July 21, 1937, was executed it was understood by both the receivers and representatives of your Company that the Florida East Coast Railway would not exercise any right to man with Florida East Coast Railway crews the trains of the Peavy-Wilson Lumber Company, Inc., operating on the Okeechobee branch so long as your crews were competent and your operations were satisfactory, unless the Florida East Coast Railway was compelled by some outside agency to so man your trains while operating on the Florida East Coast Railway Okeechobee branch."

It then declared that though the trustees had been advised by their counsel that the awards and order directing them to be put in effect are invalid, the trustees have no right to review these awards or order and since their review must await enforcing actions of the Labor Organizations, properties may be subjected to heavy damages through the delay unless the awards are put into effect on the date ordered. It advised that the trustees feel that no such risks should be taken and that the awards should be put into effect. It concluded with a notice of their intention to man plaintiff's trains with the Lumber Company's crews and of their inability to renew the present trackage right contract except upon the basis of so manning them.

Coast Railway and could not accurately foretell what would happen or occur to the company, the provisions as to manning of the lumber company's trains with railway crews would not be enforced by the receiver so long as the crews were competent, unless the receivers were compelled to enforce such provisions by some outside agency". In addition to these admissions and this averment, there were averments that debtor would suffer heavy losses from the putting of the awards into effect and from the cancellation of the agreement, and that standing upon their letter of July 18, 1941, attached to the petition, they do intend to man plaintiff's trains with railway crews unless restrained or otherwise ordered or directed by the court. In this regard, they represent that they should not be so enjoined unless appropriate surety is first given by the petitioner to protect the trustees from all losses accruing subsequent to July 30, 1941, if the two awards and orders are finally decided to be valid and enforcible. The brotherhoods did not answer but instead filed motion to dismiss (1) on the ground of want of jurisdiction over the subject matter of the litigation and over themselves, and (2) for failure of the petition to state a claim upon which relief can be granted in that (a) the suit is an attack upon an order of the Railroad Adjustment Board, which does not affect any contract right of plaintiff, (b) the suit is an attack upon the order of the Board which may not be collaterally attacked, (c) the petition shows no right against the order, and (d) whatever rights plaintiff may have had, the petition shows that they ended ninety days after the July, 19, 1941 notice.

On this motion, the district judge entered its order (1) dismissing the intervention without prejudice, (2) granting intervener leave to sue the trustees in any court of competent jurisdiction, State or Federal, with respect to the matters set up in its intervention, and (3) dissolving the order requiring the trustees to permit intervener to continue to operate its trains with its own crews and restraining them from placing Railway crews thereon.

Intervener is here complaining that in thus dismissing its complaint, though without prejudice, upon the motion of the Brotherhoods, and refusing to take jurisdiction, obliging it to go elsewhere for the relief it sought against the trustees, the district judge misapprehended the nature and effect of its claim and of the relief sought. Pointing out; that the allegations regarding the awards and the order of the Arbitration Board were only by way of explanation and inducement; that no relief was sought against the Board or the Brotherhoods and that the only relief prayed for was a judgment declaring the agreement valid and binding on and requiring the trustees to specifically perform it, appellant insists that the court of the reorganization proceedings, which had appointed the trustees, had custody of the property and was responsible for its operation, was the proper court to determine all questions affecting the property and its operation.

We agree with appellant. Whatever may be said as to the right of the Brotherhoods to be dismissed from the action, it is quite clear that plaintiff's intervention presented matters between it and the trustees properly for the decision of the court. Indeed, in view of the relief sought, control of the operations of railway properties in reorganization proceedings, the jurisdiction of no other court could properly have been invoked. It was reversible error then for the court to dismiss the intervention though without prejudice and with leave to proceed elsewhere. It should have retained it and proceeded to judgment on the pleadings against plaintiff on its claim for specific performance. For it is quite clear upon them that intervener is not entitled to the relief it seeks. The written agreement, which it pleads that the trustees adopted, on its face authorized the action the trustees propose to take, and there is no pleading that the trustees were authorized to make, and made, any agreement other than the written one. In addition, in view of the provisions of the agreement for termination on notice and the letter of the trustees notifying appellant that they will not proceed with the agreement or make a new one except in strict accordance with its written terms for manning the trains with Railway crews, no basis exists for a decree compelling the trustees of the debtor railway to specifically perform an agreement made doubtful as this one is by the effort of appellant to import into it a parol agreement in direct contradiction of its terms. The judgment is reversed and the cause is remanded for judgment on the pleadings as they now stand against plaintiff's claim but with the right to plaintiff, if so advised, to replead and for further and not inconsistent proceedings.